IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD STOLTZ, | ) | CASE NO. 5:11-CV-2666 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | REPORT & RECOMMENDATION |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the undersigned pursuant to Local Rule 72.2(b).  The issue before the Court is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Richard Stoltz's application for Child's Insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 402, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the undersigned recommends the decision of the Commissioner be VACATED.

I.  INTRODUCTION & PROCEDRUAL HISTORY

On June 26, 2007, Plaintiff Richard Stoltz ("Plaintiff" or "Stoltz") applied for Child's Insurance benefits and Supplemental Security Income benefits.[1]  (Tr. 105-06, 163-66).  Plaintiff alleged he became disabled on July 16, 1989, the date he was born, due to suffering from attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, tourette syndrome and

---

[1] Plaintiff applied for benefits when he was 17 years old.  Although he applied for Child's Insurance benefits, the ALJ analyzed Plaintiff's request under the adult standard set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a).  However, Plaintiff did not object to this decision.

oppositional behavior disorder.  (*Id*.; Tr. 190).  The Social Security Administration denied Plaintiff's applications initially and upon reconsideration.  (Tr. 105-08).  Thereafter, Stoltz requested a hearing to contest the denial of his applications for benefits.  (Tr. 124).  The Social Security Administration granted Plaintiff's request and scheduled a hearing before an administrative law judge.  (Tr. 134-50).

On September 7, 2010, Administrative Law Judge Kendra Kleber (the "ALJ") convened a hearing to evaluate Plaintiff's applications.  (Tr. 30-104).  Stoltz appeared at the hearing with counsel and testified before the ALJ.  (*Id*.).  Vocational expert, Barbara Burk, also appeared and testified at the hearing.  (*Id*.).  Additionally, the ALJ heard testimony from Plaintiff's father, Dwayne Stoltz ("Mr. Stoltz").  (*Id*.).

On October 20, 2010, the ALJ issued a decision denying Stoltz's applications for benefits.  (Tr. 12-24).  Following this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council.  (Tr. 9-10).  However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-5).  Plaintiff now seeks judicial review of the ALJ's decision.  Judicial review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  PERSONAL & MEDICAL EVIDENCE[2]

Stoltz was born on July 16, 1989 and was 17 years old at the time he applied for benefits.  (Tr. 105).  Although Plaintiff was not enrolled in special education classes in school, he was afforded preferential seating, extended time to complete assignments, options to complete large

---

[2] The following recital of Plaintiff's medical record is merely an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all the medical evidence of record.

projects in segments rather than all at once, and the assistance of an adult aide to help monitor his daily work assignments. (Tr. 109, 369, 378). Stoltz also passed all parts of the Ohio Graduation Test ("OGT"). (Tr. 314). After Plaintiff graduated, he returned to high school part-time for two years to take vocational education classes offered to 11th and 12th grade students. (Tr. 61-62). During this period, Plaintiff also worked part-time at the Red Cross performing filing tasks. (Tr. 46). Stoltz worked roughly eight hours a week. (*Id*.).

Although Plaintiff alleged he was disabled at birth, during the hearing Plaintiff's counsel admitted the earliest records documenting Plaintiff's alleged impairments only dated back to 2006. (Tr. 37-38). In July 2006, Plaintiff presented to Dr. Scott Pacer, a psychiatrist. (Tr. 355-57). Dr. Pacer diagnosed Stoltz with bipolar disorder, ADHD, oppositional defiant disorder and tourette syndrome. (Tr. 356). He also prescribed Plaintiff medication to help manage these conditions. (*Id*.). Plaintiff continued to seek treatment from Dr. Pacer on a fairly regular basis.

Records from Plaintiff's school, found in the transcript at Exhibit 5E, document Plaintiff's history of learning problems and his school's plan to provide him with special assistance. (Tr. 207-13). The reports indicate that Plaintiff's mood swings and attention problems affected his ability to learn in the classroom. (Tr. 210). They also note Plaintiff had difficulty with group projects and making friends. (*Id*.). Due to these limitations, Plaintiff was given special accommodations in school. (Tr. 209). Plaintiff's school also provided records detailing Plaintiff's two years of vocational training after graduation, found in Exhibit 21E. (Tr. 274-335).[3] A substantial part of these records are evaluations completed by the school's

---

[3] The records found in Exhibit 21E are somewhat difficult to read. Plaintiff filed a motion to supplement the record by replacing the existing pages found at 274 through 335 of the transcript with more legible copies of the same records. (Doc. 16). Because the undersigned finds remand

psychologist, Dr. Pam Mudrak, on May 11, 2009.  (Tr. 286-92, 295-97, 313-14).  The vocational records also include an evaluation labeled the "Employability/Life Skills Assessment" addressing Plaintiff's ability to work.  (Tr. 308-12).

On October 30, 2007, Stoltz presented to Dr. Paul Deardorff, for a consultative examination on behalf of the Bureau of Disability Determination.  (Tr. 368-74).  At the time of the examination, Plaintiff was in the twelfth grade, and was not performing well at school.  (Tr. 369).  Dr. Deardorff observed Plaintiff's appearance and behavior to be normal and noted Plaintiff exhibited adequate language skills. (Tr. 370).  However, Dr. Deardorff commented Stoltz seemed depressed, anxious, and preoccupied with his difficulties.  (Tr. 370-71).  The doctor assigned Plaintiff a GAF score between 51 and 60, and diagnosed him with mood disorder (not otherwise specified) and ADHD in partial remission.  (Tr. 372-73).  With regard to Plaintiff's mental ability to work, Dr. Deardorff opined Stoltz was mildly to moderately impaired in his ability to relate to others and to understand, remember and follow simple instructions.  (Tr. 373).  Plaintiff was also determined to have a moderate impairment in the ability to maintain attention, concentration, persistence and pace.  (*Id*.).  Furthermore, Dr. Deardorff found Plaintiff's ability to withstand the stress and pressure of daily work activity was moderately to seriously impaired.  (*Id*.).

On December 18, 2007, Dr. Leslie Rudy, a state agency reviewer, examined Plaintiff's medical record in order to assess his mental residual functional capacity.[4]  (Tr. 376-78).  Dr.

---

is proper, it is not necessary to entertain Plaintiff's request.  On remand, Plaintiff will have the opportunity to submit the legible documents to the ALJ for ease of reading.

[4] The doctor acknowledged reviewing Dr. Pacer's records, but it is not clear whether she also reviewed Dr. Deardorff's findings prior to issuing her opinion.

4

Rudy concluded Stoltz suffered from marked limitations in three areas of mental functioning, and no more than moderate limitations in the remaining 17 areas examined. (Tr. 376-77). Dr. Rudy also reviewed a questionnaire Mr. Stoltz completed regarding Plaintiff's activities of daily living. (Tr. 378). Dr. Rudy only partially credited Mr. Stoltz's allegations describing Plaintiff's limited activities because she found his assertions were inconsistent with what he reported to Dr. Pacer. (*Id.*). Ultimately, Dr. Rudy opined Plaintiff retained the ability to perform "simple repetitive tasks in a nonpublic setting without demands for fast pace, high production or frequent changes in assigned tasks." (*Id.*). She also indicated Plaintiff could only interact with others on a superficial level. (*Id.*).

In August 2008, Dr. Chimezie Amanambu conducted an independent medical evaluation of Stoltz. (Tr. 405-07). Dr. Amanambu found Plaintiff suffered from ADHD, bipolar disorder and chronic depression. (Tr. 406). The doctor concluded Stoltz was unable to work "because he [wa]s unable to concentrate on tasks and finish tasks." (*Id.*). Although the doctor found Plaintiff retained the ability to sit, stand, walk and lift, Dr. Amanambu noted Plaintiff's ADHD caused him "extreme difficulty with focusing and completing any tasks" and that Stoltz would "require frequent redirecting". (Tr. 407). The doctor also stressed Plaintiff could not write legibly. (*Id.*).

Finally, on May 14, 2009, Dr. Pacer, Plaintiff's treating psychiatrist, completed an assessment evaluating Plaintiff's mental ability to perform work-related activities. (Tr. 409-11). The assessment asked Dr. Pacer to rate Stoltz's ability to perform three different types of work: unskilled, semi-skilled and skilled, and particular types of jobs. (*Id.*). Dr. Pacer opined Plaintiff retained "poor or no[]" ability to perform 11 of the 17 mental aptitudes necessary to perform unskilled work; 3 of the 4 mental aptitudes necessary to perform semi-skilled or skilled work; and 3 of the 5 mental aptitudes necessary to perform particular jobs. (Tr. 409-10). Dr. Pacer

5

assigned Plaintiff a fair or better rating in the remaining categories examined. (*Id.*). Dr. Pacer also remarked Plaintiff's impairments began on June 22, 1999. (Tr. 411).

### III. ALJ'S RULING

The ALJ made the following relevant findings of fact and conclusions of law. At step one of the sequential analysis,[5] the ALJ determined Stoltz had not engaged in substantial gainful activity since his alleged onset date. (Tr. 17). At step two, the ALJ held Stoltz suffered from two severe impairments: bipolar disorder and ADHD. (*Id.*). But, at step three, the ALJ ruled neither of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19). Before moving to the next step, the ALJ assessed Stoltz's residual functional capacity ("RFC") to work. (Tr. 19-

---

[5] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

6

22). The ALJ found Stoltz retained the ability to perform physical work activities at all exertional levels, but limited Stoltz to jobs with "simple instructions" and requiring only "30-45 minutes of attention followed by a 5 minute break or being off task, with no demands for fast paced or high production work, and no frequent changes in assigned tasks." (Tr. 19). Because Stoltz's past work did not rise to the level of substantial gainful activity, the ALJ bypassed step four and moved to step five, at which time the ALJ determined there were jobs, existing in significant numbers in the national economy, which Plaintiff could perform. (Tr. 22-23).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might

accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff's attacks the ALJ's decision on two grounds. First, Plaintiff contends the ALJ failed to properly weigh the opinions of his treating psychiatrist, Dr. Pacer. Second, Stoltz argues the ALJ's RFC assessment is not supported by substantial evidence.

Before moving to the fourth step in the sequential evaluation process, the ALJ must assess the claimant's RFC. 20 C.F.R § 414.920(e). The claimant's RFC signifies the claimant's remaining capacity to engage in work-related physical and mental activities despite functional impairments stemming from the claimant's medically determinable limitations. 20 C.F.R. § 416.945; *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). The ALJ, as opposed to a physician, is ultimately responsible for determining the claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *see* 20 C.F.R. § 416.946(c). Remand is proper where there is a lack of substantial evidence supporting the ALJ's RFC assessment. *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp.2d 908, 911-13 (N.D.Ohio 2008).

A. Evaluation of School Records

In the instant case, the ALJ's RFC assessment is not supported by substantial evidence because it is based upon conclusions which are not supported by the record. The ALJ indicated she discounted Plaintiff's alleged psychological symptoms because "the record indicate[d] a clear difference between the statements of the claimant and his family and *all* external records." (Tr. 20) (emphasis added). The ALJ's evaluation of Plaintiff's applications for benefits relied considerably upon Plaintiff's school records contained in Exhibits 5E and 21E. But, these records do not support the conclusions reached by the ALJ.

Citing to Exhibit 21E, the ALJ discounted Plaintiff's alleged symptoms holding these records showed Plaintiff's ability to maintain focus and work without supervision were improving, and that Plaintiff had a good ability to work in a group setting. (Tr. 20-21). Yet, the evidence actually indicated Stoltz struggled with staying on task. For example, the Employability/Life Skills Assessment to which the ALJ cites, noted Stoltz was "seldom" able to meet his teacher's expectations regarding the length of time used to complete assignments or to complete a task without being distracted, and only "sometimes" returned to his work after being distracted. (Tr. 309 at § II(B)). Likewise, the assessment indicated Stoltz was not successful at working independently, s*ee* (*Id*. at § II(C)), or at "making age-appropriate decisions without teacher intervention". (Tr. 310 at § V(A)). Although the report indicated Plaintiff could "sometimes" work well with others, Dr. Mudrak's report, which is included in Exhibit 21E, stated Plaintiff "had difficulty functioning in a larger group setting." (Tr. 310 at § VII(A); Tr. 313). Thus, the record actually contradicts the ALJ's findings that Plaintiff's ability to focus was improving and that he had a "good ability" to work in group settings.

9

Also troubling was the ALJ's interpretation of Plaintiff's passage of all areas of the OGT. The ALJ seemed to imply that Plaintiff's ability to pass these tests somehow undermined he and his family's assertions of disabling symptoms. However, Dr. Mudrak concluded Plaintiff's ability to perform well academically did not translate into him being able to succeed vocationally. The doctor stated, "[i]t appears that although Richard has been academically successful, passed his OGTs, and [] advanced through 12 grades, he is now having great difficulty with transitioning to work." (Tr. 314). In a similar vein, Defendant argues Plaintiff does not require the assistance of an aide to work because while in school Plaintiff was offered tutoring, but often forgot to attend or refused the assistance. But, Dr. Mudrak's evaluation of Plaintiff's academic and work performance as well as his medical records, led her to believe that Stoltz needed special education services in order for him to be successful vocationally. (Tr. 314). Accordingly, while it was reasonable for the ALJ to consider Plaintiff's academic successes in determining his degree of limitation, these achievements alone were not conclusive evidence of Stoltz's ability to maintain gainful employment.

Later in her opinion, the ALJ indicated she assigned great weight to the vocational evidence contained within Exhibit 5E. (Tr. 22). This exhibit houses records from Field Local Schools documenting the individual education plan created for Stoltz to accommodate his disabilities. The records are dated between April and September of 2007 and mostly evidence the academic problems arising from Stoltz's mental impairments. These records certainly do not support the ALJ's finding that Plaintiff retained the ability to work. Rather, they document the provisions made by school administrators to assist Stoltz with gaining academic success despite the individual obstacles he faced.

Defendant insists the ALJ erroneously cited to Exhibit 5E, and instead intended to assign great weight to the records contained in Exhibit 21E, including the Employability/Life Skills Assessment discussed above. Even if the undersigned were to credit this assertion, it is unavailing. As discussed above, the findings in Exhibit 21E upon which the ALJ relied, do not support her ruling. Consequently, even if the ALJ intended to assign great weight to the records in Exhibit 21E instead of Exhibit 5E, these records do not provide substantial support for her RFC finding. Therefore, remand is necessary in order for the ALJ to re-assess Plaintiff's RFC. Although Defendant presented arguments and cited to evidence which *could* have supported the ALJ's decision, unfortunately it is the ALJ's opinion the Court must evaluate. *See May v. Astrue*, No. 4:10-CV-1533, 2011 WL 3490186, at *9 (N.D.Ohio June 1, 2011) (*R&R adopted*, 2011 WL 3490229 (Aug. 10, 2011)). *Post hoc* rationalizations presented by Defendant do not warrant affirmation of the ALJ's ruling. *Id*. (*citing Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

### B. Medical Opinion Evidence

Though the undersigned finds remand is warranted due to the lack of substantial evidence supporting the ALJ's RFC finding, the Court will briefly address Plaintiff's remaining assignment of error. Plaintiff objects to the ALJ's evaluation of his treating psychiatrist's opinion. Stoltz argues that the opinions issued by Dr. Pacer were entitled to controlling weight. When assessing the medical evidence contained within a claimant's file, it is well-established that the ALJ must give special attention to the findings of the claimant's treating sources. *See Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, referred to as the "treating source rule" recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the

11

individual's health and treatment history. *Id*.; 20 C.F.R. § 416.927(c)(2). Opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544. Even when a treating physician's opinion is not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion. *Id*; 20 C.F.R. § 416.927(c)(1)-(6). The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions. *Wilson*, 378 F.3d at 544.

In the instant case, the ALJ assigned minimal weight to Dr. Pacer's opinion regarding Plaintiff's ability to work. The ALJ explained Dr. Pacer's findings were not entitled to controlling weight because they were inconsistent with his own findings, conclusory, and contradicted by Stoltz's actual demonstrated abilities. During the hearing, the ALJ questioned counsel rather extensively regarding the inconsistencies between Dr. Pacer's progress notes and his ultimate findings. (Tr. 38-43). For instance, the ALJ noted several records from Plaintiff's visits to Dr. Pacer wherein the doctor indicated the claimant was doing well and that his conditions were improving. The ALJ contrasted these records with Dr. Pacer's final assessment of Plaintiff's ability to work which painted a much different picture of Plaintiff, suggesting he retained poor or no ability to work. During the hearing, Plaintiff's father testified that the contradictions between Dr. Pacer's progress notes and the doctor's final assessment could be attributed to his statements to the doctor during Stoltz's appointments. Mr. Stoltz explained that he did not want to embarrass or humiliate Plaintiff during these visits, so he would often tell Dr. Pacer that Plaintiff was doing "okay" or "a little better" even when such statements were not true.

Given the inconsistencies between Dr. Pacer's progress notes and his ultimate findings, it was reasonable for the ALJ to assign less than controlling weight to Dr. Pacer's conclusions.  *See Wilson*, 378 F.3d at 544 (Treating physician's opinion not entitled to controlling weight where it is "inconsistent with other substantial evidence in the case record.").  Because the ALJ provided legitimate reasons for discounting Dr. Pacer's opinion, which are supported by evidence in the record, the ALJ's evaluation of Dr. Pacer's opinion cannot be deemed unsound.  However, in light of the ALJ's faulty evaluation of many of the school records found in Exhibits 5E and 21E, it may be prudent on remand for the ALJ to re-evaluate the medical opinion evidence as these records seem to provide support for many of the conclusions reached by the doctors who examined Plaintiff.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court recommends the decision of the Commissioner be VACATED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this Report and Recommendation, and that *Plaintiff's Motion To Replace Pages In The Administrative Record*, (Doc. 16), be denied as moot.


                s/ Kenneth S. McHargh
                Kenneth S. McHargh
                United States Magistrate Judge

Date: November 9, 2012.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified

time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).